IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALBERT QUAYE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-350 (LMB/TCB) |
| ) | |
| WASHINGTON GAS LIGHT COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

In this civil action, plaintiff Albert Quaye ("Quaye" or "plaintiff") alleges that defendant Washington Gas Light Company ("Washington Gas" or "defendant") violated Title VII and 42 U.S.C. § 1981 when it terminated him because of his race and national origin and in retaliation for having previously filed EEOC charges against defendant. Defendant has filed a Motion for Summary Judgment [Dkt. No. 28], to which plaintiff has responded. For the reasons stated in open court and in this Memorandum Opinion, defendant's Motion will be granted.

### I. FACTUAL BACKGROUND

Quaye, an African American of Ghanaian origin, began working at Washington Gas in 1991. Def. Mem. [Dkt. No. 28-1] Statement of Undisputed Facts ("SUF") ¶ 1. When he was terminated in 2013, Quaye was working as a Service Technician, which meant that he was responsible for investigating and repairing gas leaks from Washington Gas's systems and performing various types of maintenance and construction work on Washington Gas facilities and instruments. Def. Mem. SUF ¶ 2; Def. Mem. Ex. 2.

In July 2008, Quaye was assessed a Step 4 disciplinary violation,[1] suspended for ten days, and demoted from a Grade 7 ("Senior Operations Technician") to a Grade 5 ("Operations Mechanic") after he improperly responded to a residential gas leak. Def. Mem. Ex. 4.[2] Two months later, Quaye voluntary resigned and filed a charge of discrimination with the EEOC. Def. Mem. SUF ¶¶ 7-8. The parties participated in mediation and reached a settlement, under which Quaye was reinstated as a Grade 6 ("Service Technician") employee with a Step 3 discipline record. Id. ¶ 8; Def. Mem. Ex. 5.

In February 2011, Quaye was again suspended for ten days under Step 4 of the disciplinary ladder for failing to appropriately investigate a residential gas leak. Def. Mem. Ex. 6. According to the discipline form, Quaye was dispatched to a house where a gas odor had been detected; although he completed some repairs outside the home, he improperly failed to go into the home to investigate the odor. Id.[3] In July 2012, Quaye filed a second charge with the EEOC, alleging (among other things) that the 2011 suspension was in retaliation for his filing the 2008 EEOC charge. Def. Mem. Ex. 7. The EEOC charge was transferred to the Fairfax County Office of Human Rights and Equity Programs ("OHREP"), which ultimately found that there was not

---

[1] Under the terms of the labor contract between Washington Gas and the International Brotherhood of Teamsters, Local 96, union employees are subject to a five-step disciplinary scale that starts with a written reprimand and ends with a discharge. Def. Mem. Ex. 3, at 45. Infractions remain on an employee's record for 12 (Step 1 and 2), 36 (Step 3), or 60 (Step 4) months. Id. at 45-46. This implies that, at the time he was suspended in 2008, Quaye was already on Step 3 of the disciplinary ladder, but the parties do not discuss any previous infractions.

[2] Quaye argues in his brief that this suspension and demotion were in retaliation for complaints he made to his supervisor about racial discrimination, Pl. Opp. 3; however, Quaye is not asserting a cause of action based on this suspension and there is no evidence in the record from which a trier of fact could find that this suspension was retaliatory because neither side has developed evidence concerning the events leading up to this suspension.

[3] Quaye mentions in his brief that he believes that this suspension was retaliatory and that the reason given by Washington Gas for the suspension was pretextual, Pl. Opp. 4; however, he is not asserting a cause of action based on this suspension and he has not introduced sufficient evidence to allow a trier of fact to find that the reason offered by Washington Gas was false.

sufficient evidence to support the charge. Def. Mem. Ex. 8. In January 2017, the EEOC adopted the findings of the OHREP, closed the charge, and provided Quaye with his right-to-sue letter. Def. Mem. Ex. 10. He did not file a lawsuit involving this suspension.

In October 2013, Quaye repaired a gas leak inside a Washington Gas customer's home while he was off-duty. Def. Mem. Ex. 1 ("Quaye Dep.") 61:7-:21. The customer paid Quaye $200, which Quaye says was reimbursement for parts he bought for the repair. Id. at 69:21-70:15. Shortly after Quaye repaired the leak, the customer again detected a gas odor and called Washington Gas, which dispatched another technician to investigate the odor. Def. Mem. Ex. 11 ¶ 4. While the technician was at the customer's house, the customer told him that Quaye had recently performed work at the residence. Id. The technician reported this to Washington Gas, which launched an investigation and suspended Quaye pending the outcome of that investigation. Id. ¶¶ 4-5. During the course of Washington Gas's investigation, Quaye admitted that he had performed the work. Quaye Dep. 79:3-:19.

On November 20, 2013, following Washington Gas's investigation, Quaye was terminated for violating a provision of defendant's Code of Conduct, which prohibits all employees from engaging in any "transaction affecting Company business that conflicts or appears to conflict with the best interests of the Company" and from "taking opportunities for themselves personally that are discovered through the use of corporate property, information or their position." Def. Mem. Ex. 11.

In December 2013, Quaye filed a third EEOC charge, in which he alleged that Washington Gas had suspended and then terminated him because of his race and national origin and also in retaliation for his previous EEOC complaints. See Def. Mem. Ex. 13. This charge was also transferred to the OHREP, which issued a determination in September 2017 that there

3

was not sufficient evidence to support the charge. Def. Mem. Ex. 14. In October 2017, the EEOC adopted these findings and sent plaintiff his right-to-sue letter. See Pl. Response to Order [Dkt. No. 39] Ex. 2.

On March 24, 2017, before receiving his right-to-sue letter, plaintiff filed the original Complaint in this civil action, which he amended on June 5, 2017. In the Amended Complaint, plaintiff asserts claims for "race discrimination, national origin discrimination, and retaliation" in violation of Title VII and § 1981. Am. Compl. [Dkt. No. 13] ¶¶ 13-15.[4] He seeks reinstatement, back pay, and $3 million in compensatory damages for pain and suffering and punitive damages, as well as attorney's fees and costs. Id. ¶¶ 16-21. In the instant Motion for Summary Judgment, defendant argues that it should be granted summary judgment on both the Title VII and the § 1981 claims because plaintiff has not introduced sufficient evidence to allow a reasonable jury to infer that he was suspended or terminated because of his race, national origin, or previous charges filed with the EEOC.

## II. DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment if the party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In general, bare allegations or assertions by the nonmoving party are not

---

[4] Since filing the Amended Complaint, plaintiff received his right-to-sue letter and moved for leave to file a Second Amended Complaint, which would cure any outstanding jurisdictional defects caused by the initial lack of the letter. The motion was granted and plaintiff has filed a Second Amended Complaint. On a substantive level, the Second Amended Complaint is identical to the Amended Complaint.

4

sufficient to generate a genuine dispute; instead, the nonmoving party must produce "significantly probative" evidence to avoid summary judgment. Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 929-30 (4th Cir. 1990) (quoting Anderson, 477 U.S. at 242). That being said, in ruling on a motion for summary judgment, a court should accept the evidence of the nonmovant, and all justifiable inferences must be drawn in her favor. Anderson, 477 U.S. at 255.

### B. Section 1981 and Title VII Discrimination Claims

To establish a prima facie case of discrimination under Title VII or § 1981, Quaye must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) his performance at the time of his discharge met Washington Gas's legitimate expectations; and (4) the discharge occurred "under circumstances giving rise to an inference of unlawful discrimination." Adams v. Trustees of the University of N.C.-Wilmington, 640 F.3d 550 (4th Cir. 2011). Washington Gas concedes the first two prongs of this test but argues that Quaye has not introduced sufficient evidence to allow a reasonable jury to find that he was meeting Washington Gas's legitimate expectations or that the termination occurred under circumstances giving rise to discrimination.

Quaye has admitted that he performed outside work for a Washington Gas customer; however, he argues that such outside work was permitted and that a variety of white employees engaged in outside work and were not disciplined. Therefore, Quaye argues he was meeting Washington Gas's actual expectations and a jury could infer that he was terminated because of his race and national origin.[5]

---

[5] Quaye is forced to rely on this indirect evidence because the record is entirely devoid of any direct evidence, such as racially insensitive remarks from co-workers or supervisors, of discriminatory motive. In addition, the Washington Gas employee who conducted the investigation into Quaye's conduct, Sondiata McKeithan, is himself black. Def. Mem. Ex. 11 ¶ 2. Although "not dispositive," this "undercuts an inference of discrimination." Arrington v. ER

Contrary to plaintiff's argument, the evidence establishes that Quaye's external work violated defendant's conflict-of-interest policy, which prohibits employees from engaging in any transaction that conflicts with Washington Gas's best interests and from taking any opportunities for themselves that they discover through Washington Gas property or information or from their position with defendant. Def. Mem. Ex. 12. Washington Gas's investigation into Quaye's conduct revealed that Quaye, who was not a licensed and bonded contractor, obtained this outside work after a Washington Gas technician, Randy Ralph ("Ralph"), gave the Washington Gas customer Quaye's contact information. Def. Mem. Ex. 14. This uncontested evidence establishes that Quaye obtained this work because of his position at the company (as Ralph, another Washington Gas technician, referred the customer to Quaye) and performed the work in conflict with Washington Gas's best interests (as Washington Gas could have been liable for any harm done by Quaye, who was not personally bonded, under a theory of apparent agency).

In an effort to prove that his work did not violate defendant's policy as it was understood by Washington Gas at the time, Quaye submits deposition testimony from three Washington Gas employees, Michael Riley ("Riley"), Daryl Sawyer ("Sawyer"), and James Hudson ("Hudson").[6] Quaye seems to argue that Riley and Sawyer testified that they understood that the work Quaye did was not a violation of the policy. Pl. Opp. 5-7. In fact, neither of these employees testified that Quaye's work did not violate the policy. Riley, who was also a Washington Gas technician, testified that he did off-the-clock gas-light repair work but did not believe that his own work was

---

Williams, Inc., No. 1:11-cv-535, 2011 WL 6301046, at *8 (E.D. Va. Dec. 16, 2011), aff'd, 490 F. App'x 540 (4th Cir. 2012).

[6] Quaye also submits his own testimony that he was told by some unnamed official at Washington Gas in 2005 that the conflict of interest policy only prevented Washington Gas employees from working with contractors that contract work from Washington Gas. See Quaye Dep. 127-134. Without additional evidence supporting the idea that Washington Gas in fact explained the policy in this way, a reasonable jury could not conclude solely from this self-serving testimony that Quaye did not violate the policy.

a violation of the policy because he categorically refused to do off-the-clock work "if it was related to Washington Gas in any way, shape, or form." Pl. Opp. Ex. B ("Riley Dep.") 35-36. This statement actually undermines plaintiff's position because it demonstrates the difference between permitted and prohibited work, which is what Quaye engaged in. Sawyer, who is currently a crew leader at Washington Gas, testified that he was unaware of any policy that prohibits Washington Gas employees "from working in any job related to the provision of gas services, you know, generally." Pl. Opp. Ex. D ("Sawyer Dep.") 8:9-:13. This testimony is irrelevant because all parties agree that the conflict of interest policy does not represent a categorical prohibition on off-the-clock gas services work; instead, the policy only applies to work with a connection to or conflict with Washington Gas. Sawyer was not asked, and did not testify to, his understanding of how the policy would apply to off-the-clock work for Washington Gas customers.

Quaye also argues that the testimony of Hudson, who was the manager of the Department of Field Operations when Quaye was terminated, proves that the work Riley did was "no different" from the work that Quaye did. Pl. Opp. 6. In reality, Hudson testified that installing gas logs (which was some of the work Riley did) and doing stove top work (which Quaye did) are probably not substantively different. Pl. Opp. Ex. C ("Hudson Dep.") 32:6-:17. He was not asked to compare the actual work Riley did with the work Quaye did nor was he asked whether his belief would change if the work was only done for customers with no relationship to Washington Gas. In addition, Hudson unequivocally testified that he believed Quaye had violated the policy and explained that the rationale behind Quaye's termination was that he had "put the company and the homeowner is a situation, safety and financially, if something was to go wrong there." Id. at 31:18-:22. On this record, it is clear that Quaye was violating the policy

7

as written, and there is no evidence from which a reasonable jury could conclude that his actions were not in violation of the policy as understood by Washington Gas.[7]

In a declaration provided by plaintiff in support of his brief opposing summary judgment, he identifies nine white employees who he claims "did outside gas-light work while employed by Washington Gas": Kevin Kaye, John Surdam, James Stone, James Orison, Jeff Turner, Donald Fenton, James Braswell, Michael Riley, and Patrick Reidy. Pl. Opp. 6, 10, Ex. A ("Quaye Decl.") ¶ 9.[8] Of those technicians, only Riley, Reidy, Surdam, and Fenton are discussed in any of the evidence in the record.

As discussed above, Riley is not an appropriate comparator, because he testified that he only did off-the-clock work unconnected to Washington Gas. Riley's deposition provides the only source of information in the record about Reidy, who was apparently not deposed. Riley testified that Reidy did some gas work with Riley's father at a company called Brite Lite, but Riley was unsure whether Reidy did that outside work while he was employed at Washington Gas or after he retired. Riley Dep. 21:22-22:13. Riley was never asked about his knowledge of the content of Reidy's outside work or whether Reidy did work for Washington Gas customers while at Brite Lite. Therefore, Reidy cannot serve as an appropriate comparator either.

---

[7] Quaye also mentions in his brief that an investigation was opened in December 2011 after he allegedly failed to identify a gas leak. Pl. Opp. 4. Based on the evidence developed in the second EEOC charge, it appears that a customer complained about how Quaye handled a gas leak dispatch in November 2011. Def. Mem. Ex. 8. Washington Gas opened an investigation, but the investigation concluded that Quaye had acted appropriately and Quaye was not disciplined. Id. Quaye asserts that this investigation shows that Washington Gas was trying to find reasons to terminate him, but there is no evidence in the record about this investigation from which a reasonable jury could draw that conclusion. Moreover, Quaye has not asserted a claim based on this investigation.

[8] It is not entirely clear whether Quaye argues that this evidence is relevant to the third or fourth prongs of the test, but presumably it could be relevant to both prongs, depending on how it is framed.

At Quaye's deposition, when he was asked about white employees who did outside work while employed at Washington Gas, he named Donald Fenton and James Surdam. According to Quaye, Fenton was employed as a service technician at Washington Gas but, at the same time, he owned an independent contracting business that did HVAC, furnace, and customer leak work, Quaye Dep. 85:11-86:13; however, Quaye did not identify any Washington Gas customer for whom Fenton performed gas-related work. Quaye also testified that Fenton drove his company vehicle to work. Id. at 87:14-:16. With respect to Surdam, Quaye merely testified that Surdam did off-the-clock work installing gas logs in fireplaces, including in Quaye's own fireplace, and that Quaye's supervisor told Quaye that it was appropriate for Surdam to install Quaye's fireplace. Id. 88:18-:20; 115:15-117:5. Again, he did not testify that Surdam performed work for Washington Gas customers.

Even reading the testimony about Fenton and Surdam in the light most favorable to Quaye, neither employee is an appropriate comparator. When identifying a comparator, a plaintiff is "required to show that [he is] similar in all relevant respects" to the comparator, which includes evidence that the two employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (alterations in original) (internal quotation marks omitted). Quaye has failed to make such a showing for either Fenton or Surdam. There is no evidence in the record that either employee engaged in off-the-clock work for Washington Gas customers or obtained customers through Washington Gas technicians' referrals, nor is there any evidence that either Fenton or Surdam had a history of disciplinary infractions like Quaye or was supervised by the same individuals as Quaye. In addition, there is

no evidence that Washington Gas ever learned of Fenton's or Surdam's off-the-clock work or that either employee was not a licensed and bonded independent contractor. Therefore, Quaye has not introduced sufficient evidence to meet his burden of showing that either Fenton or Surdam was sufficiently similarly situated to serve as an appropriate comparator.

On this record, Quaye, who had a long history of disciplinary infractions and was already on Step 4 Discipline when he did off-the-clock work for a Washington Gas customer, has failed to make out a <u>prima facie</u> case of discrimination, because he cannot show that he was meeting Washington Gas's legitimate expectations and that the circumstances around his termination give rise to an inference of discrimination.

### C. <u>Section 1981 and Title VII Retaliation Claims</u>

To establish a <u>prima facie</u> retaliation claim, Quaye must show that he engaged in protected activity, that Washington Gas took an adverse employment action against him, and that there was a causal connection between the protected activity and the adverse employment action. <u>Jones v. HCA (Hospital Corp. of Am.)</u>, 16 F. Supp. 3d 622, 634 (E.D. Va. 2014). The first two elements are uncontested, but Quaye cannot demonstrate the requisite causal connection.

As discussed above, Quaye has not introduced sufficient evidence to allow a reasonable jury to conclude that the reason given for his termination—that he violated the conflict of interest policy by performing off-the-clock work for a Washington Gas customer that he was referred to by another Washington Gas technician—was pretextual. As such, he cannot meet his burden of proving that the real reason for his termination was the filing of EEOC charges. Moreover, the last EEOC charge was filed in July 2012, Def. Mem. Ex. 7, approximately 16 months before Quaye was terminated. Even setting aside the lack of evidence to show pretext, the 16 month time gap is itself sufficient, at least in the absence of additional evidence, to defeat any causal

inference. Cf. Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229, 233-34 (4th Cir. 2006). Because Quaye has not introduced sufficient evidence to allow a reasonable jury to conclude that there was a causal connection between his termination and his protected activity, this claim fails.

III. CONCLUSION

For the reasons stated in open court and in this Memorandum Opinion, defendant's Motion for Summary Judgment will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 17 day of November, 2017.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge